UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRIDGEPOINT HEALTHCARE LOUISIANA, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 21-1926** |
| **BLUE CROSS BLUE SHIELD OF NORTH DAKOTA** | **SECTION: T(2)** |

### ORDER

Before the Court is the Defendant Blue Cross Blue Shield of North Dakota's ("BCBS") *Motion to Dismiss*.[1] The Plaintiff Bridgepoint Healthcare Louisiana, LLC ("Bridgepoint") filed a response.[2] For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

In January of 2020, an individual was transferred from a local hospital to Bridgepoint Healthcare Louisiana, LLC's ("Bridgepoint") long term acute care facility.[3] Upon arrival, the individual signed a "Patient Agreement" with "a written assignment of insurance benefits" to Bridgepoint.[4] A few months later, the person left Bridgepoint's care. Now, Bridgepoint seeks to recover, through the assignment agreement, the cost of treatment from the individual's health insurer, Blue Cross Blue Shield of North Dakota ("BCBS").[5] Specifically, Bridgepoint alleges an Employee Retirement Income Security Act ("ERISA") violation and several state law claims.[6]

---

[1] R. Doc. 13.
[2] R. Doc. 16.
[3] R. Doc. 1 at 2-4.
[4] R. Doc. 16 at 2.
[5] *Id.* Initially, Bridgepoint raised its insurance claims with BCBS, but those claims were denied. *See* R. Doc. 1.
[6] *See* R. Doc. 1.

In the present motion, BCBS asks this Court to dismiss Bridgepoint's suit for two reasons.[7] First, BCBS contends that Bridgepoint "lacks standing to bring its ERISA claims" because the insurance plan has an anti-assignment clause.[8] BCBS contends the clause, which states "[b]enefits described in [the plan] are available to Members and cannot be transferred or assigned," is "unambiguous, and thus enforceable."[9] Second, BCBS argues the state law claims are preempted by ERISA.[10] BCBS maintains that, because the claims "are dependent on and derived from the rights of [a member] to recover" under an ERISA plan, they are barred by Fifth Circuit precedent.[11]

Bridgepoint raises three responses.[12] First, Bridgepoint argues that, because the anti-assignment clause is vague and contradictory, it must be interpreted against BCBS to allow assignments.[13] Second, and relatedly, Bridgepoint contends the anti-assignment provision is invalidated by a Louisiana law requiring "insurers to honor assignments…to hospitals."[14] Third, Bridgepoint maintains its state law claims are considered "[i]ndependent of ERISA" under Fifth Circuit precedent.[15]

## LAW & ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[16] To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[7] R. Doc. 13.
[8] R. Doc. 13-1 at 5-8.
[9] *Id.* at 8.
[10] *Id.* at 10.
[11] *Id.* at 11.
[12] R. Doc. 16.
[13] *Id.* at 8-14.
[14] *Id.* at 14-16.
[15] *Id.* at 18-21.
[16] Fed. R. Civ. P. 12(b)(6).

is plausible on its face.'"[17] Federal Rule of Civil Procedure 8 demands "simple, concise, and direct" allegations which "give the defendant fair notice of what the claim is and the grounds upon which it rests."[18] In reviewing a motion to dismiss, a court "must take the factual allegations … as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff."[19] Accordingly, such motions are viewed with disfavor and rarely granted because "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[20]

Federal Rule of Civil Procedure 12(b)(1) is the initial vehicle for parties to raise a "lack of subject-matter jurisdiction" defense.[21] "The standard of review applicable to…Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6)," but the court may review a broader range of materials in considering subject-matter jurisdiction.[22] "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[23]

---

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[18] Fed. R. Civ. P. 8(d)(1); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).
[19] *Jefferson v. Lead Indus. Ass'n, Inc*., 930 F. Supp. 241, 244 (E.D. La. 1996); *Lovick v. Ritemoney Ltd*., 378 F.3d 433, 437 (5th Cir. 2004) (citing *Herrmann Holdings Ltd. v. Lucent Techs., Inc*., 302 F.3d 552, 558 (5th Cir. 2002)). However, the court is not obligated to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.
[20] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc*., 677 F.2d 1045, 1050 (5th Cir. 1982); *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).
[21] Fed. R. Civ. P. 12(b)(1).
[22] *Thomas v. City of New Orleans*, 883 F. Supp. 2d 669, 676 (E.D. La. Aug. 2, 2012) (citing *Williams v. Wynne*, 533 F.3d 360, 364–65 n. 2 (5th Cir. 2008).
[23] *Clark v. Tarrant Cty., Texas*, 798 F.2d 736, 741 (5th Cir. 1986).

I.   **ERISA & Ambiguity**

As an initial matter, the Court must review the language of the insurance plan in question. In interpreting a plan, a court should not read "provisions [] in isolation, but as a whole."[24] Additionally, plan provisions must be read "according to their plain meaning and as they are likely to be 'understood by the average plan participant.'"[25] Furthermore, "any ambiguities will be resolved against the plan."[26]

Here, BCBS's plan states the "[b]enefits described in this Benefit Plan are available to Members and cannot be transferred or assigned."[27] Additionally, "[a]ny attempt to transfer or assign the benefits of this Benefit Plan to ineligible persons will result in automatic termination."[28] "Ineligible persons" is not defined in the plan. However, the term "ineligible persons" necessarily implies there are people who are "eligible." Therefore, the plan's categorical rejection of assignments is modified by an ambiguous term. To resolve this ambiguity, the Court must turn to the plan "as a whole."[29] However, the Court finds only more ambiguity elsewhere in the plan. For example, "Participating Health Care Providers" may "submit claims to BCBS[] on behalf of [a] Member" and be "[r]eimburse[d]…directly" for medical services.[30] Considering the undefined nature of "ineligible persons" and the permitted reimbursement of some providers despite an anti-assignment clause, the Court finds there are ambiguities that, when viewed in favor of Bridgepoint,

---

[24] *Dallas County. Hosp. Dist. v. Associates' Health & Welfare Plan*, 293 F.3d 282, 288 (5th Cir. 2002).
[25] *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 251 (5th Cir. 2019) (quoting 29 U.S.C. § 1022(a)(1)).
[26] *Id.* (brackets omitted).
[27] R. Doc. 13-2 at 16.
[28] *Id.*
[29] *Dallas County*, 293 F. 3d at 288.
[30] R. Doc. 13-2 at 20-21. "Participating Health Care Providers" is defined, but it is unclear whether Bridgepoint qualifies at this time.

4

may warrant recovery. Consequently, the Court will not rule on the matter without the benefit of additional evidence and further argument.

## II. ERISA & Louisiana Law

A party may have standing to sue under an ERISA plan if they are a participant or beneficiary.[31] While a "health care provider has no independent right of standing to seek redress under ERISA," providers may have standing "by virtue of a valid assignment."[32] However, such standing "is subject to any restrictions contained in the plan" and may be negated by a valid anti-assignment clause.[33] Ultimately, "[i]f the provider lacks standing to bring the lawsuit due to a valid and enforceable anti-assignment clause, then federal courts lack jurisdiction to hear the case."[34]

Although ERISA is a federal framework, a plan's provisions, including anti-assignment clauses, may still be subject to state law.[35] Under Louisiana Revised Statute § 40:2010, no insurer "shall pay [] benefits to the individual when…the individual's rights to those benefits have been assigned to [a] hospital." In *Louisiana Health Service & Indem. Co. v. Rapides Healthcare System*, the Fifth Circuit held that § 40:2010 is not preempted by ERISA and may invalidate anti-assignment clauses.[36] However, in the ERISA context, the scope of § 40:2010 is outlined in *Dialysis Newco, Inc. v. Community Health Systems*.[37] There, the Fifth Circuit distinguished § 40:2010 from a seemingly similar preempted Tennessee law.

---

[31] *Dallas County*, 293 F. 3d at 285.
[32] *Id.*
[33] *Dialysis*, 938 F.3d at 250.
[34] *Id.*
[35] *See Louisiana Health Service & Indem. Co. v. Rapides Healthcare System*, 461 F. 3d 529, 533 (5th Cir. 2006) ("ERISA plans must always conform to state law, but only state law that is valid and not preempted by ERISA.").
[36] 461 F. 3d at 541. "As we conclude that Louisiana's assignment statute is not preempted by ERISA, we leave the public policy decision to Louisiana's legislative body. They have chosen assignment of benefit claims over inducing hospitals to enter into Blue Cross's provider networks. Nothing in ERISA requires us to alter that choice." *Id.*
[37] 938 F. 3d 246.

> The Louisiana statute at issue in *Rapides* required administrators to honor direct-payment authorizations; however, the Tennessee statute at issue in this case requires administrators to honor assignments and all the legal rights that flow therefrom—to include liability to be sued by a third party not otherwise in contractual privity with the plan. Moreover, the Louisiana statute at issue in *Rapides* did not purport to require that plans include specific language, whereas the Tennessee statute does.[38]

Therefore, under circuit precedent, LA R.S. § 40:2010 may invalidate an "anti-assignment clause" so long as it applies to "direct-payment authorizations," not wholesale assignments.[39] Consequently, Bridgepoint's ERISA claims may survive only to the extent that they seek to honor a "direct-payment authorization."[40] The parties dispute whether Bridgepoint is trying to enforce a direct-payment authorization or a total assignment.[41] Under 12(b)(1), a court may examine "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[42] At this time, under 12(b)(1), the Court finds Bridgepoint is raising a direct-payment authorization claim. Accordingly, the motion to dismiss is **DENIED**.[43] Without the benefit of discovery and further argument, the Court will not explore further the nature of Bridgepoint's claims and the plan's language.

---

[38] *Id.* at 257.
[39] "A direct-payment authorization means only that the beneficiary tells the administrator to forward the checks owed to him or her on to the provider instead. An assignment of benefits is more than that. An assignment means that the provider has stepped into the metaphorical shoes of the beneficiary and is capable of exercising all the legal rights enjoyed by the beneficiary under the plan, to include suing the plan and/or its administrator over disputes that might arise in the plan's interpretation." *Id.* at 254.
[40] The Court finds that, regardless of the exact nomenclature, Bridgepoint is entitled to bring suit to recover under either classification. *See Rapides*, 461 F. 3d 529 (allowing a provider to bring suit for a direct-payment authorization).
[41] R. Doc. 16 at 13-16; R. Doc. 26 at 6.
[42] The Court notes this is an issue of subject-matter jurisdiction because, under the application of a valid anti-assignment clause, the Court lacks jurisdiction over the matter entirely. *See Dialysis*, 938 F.3d at 250.
[43] If it is later determined that Bridgepoint has brought suit under a "full assignment of benefits" scheme, any party may raise a motion for reconsideration at the appropriate time.

### III. State Law Claims

Under 29 U.S.C. § 1144(a), ERISA "shall supersede any and all State laws insofar as they may…relate to any employee benefit plan described" in the statute. In the Fifth Circuit, a state law claim "relates to" ERISA "when the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan, and when the claim directly affects the relationship between the traditional ERISA entities-the employer, the plan, and its fiduciaries, and the participants and beneficiaries."[44] ERISA preemption is an "affirmative defense which must be proven by the defendant at trial."[45] Bridgepoint raises five state law claims: (1) a breach of contract, (2) detrimental reliance, (3) negligent misrepresentation, (4) a failure to promptly pay, and (5) unjust enrichment.

#### a. Breach of Contract, Detrimental Reliance, and Negligent Misrepresentation

The scope of ERISA's preemption over state law claims is wide-ranging but not without exception.[46] Importantly, "[a] health care provider may have both a valid assignment of its patient's rights and a direct claim arising under state law and can elect to assert ... both of those claims."[47] Preemption does not exist simply because "an analysis of the benefit plans at issue" is required.[48] A state law claim can be raised congruent with ERISA violations if it is "not brought by Plaintiffs in their capacities as assignees of ERISA rights" and it "arise[s] from Defendants' alleged representations made to [the] Plaintiffs directly."[49] In short, a party may bring a state law

---

[44] *Sutherland v. U.S. Life Ins.*, 263 F. Supp. 2d 1065, 1071 (E.D. La. 2003).
[45] *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 379 (5th Cir. 2011).
[46] *See Sutherland*, 263 F. Supp. 2d at 1072.
[47] *Center for Reconstructive Breast Surgery*, LLC v. *Blue Cross Blue Shield of Louisiana*, 2014 WL 4930443, at *6 (quoting *Ctr. For Restorative Breast Surgery, L.L.C. v. Humana Health Ben. Plan of Louisiana, Inc.*, 2011 WL 1103760, at *2 (E.D. La. 2011).
[48] *Id.*
[49] *Id.* Such representations "do not address areas of exclusive federal concern." *Id.*

7

claim based on a misrepresentation. Specifically, a party may couple state law claims with ERISA violations if they are acting "as independent health care providers seeking redress under Louisiana laws for the unlawful acts and inactions of Defendants for their direct dealings with the Plaintiffs" outside of the ERISA plan.[50]

Here, Bridgepoint's state law claims are based on two alleged representations by BCBS. First, "[o]n February 1, 2020, Plaintiff was granted pre-approval for treatment…from BCBS" which "authoriz[ed] treatment from January 9, 2020 through February 6, 2020."[51] Second, "[o]n March 27, 2020, BCBS [] issued an Approval Notice letter, approving the payment of care for the Insured from January 9, 2021 through January 22, 2021."[52] After BCBS allegedly broke those promises, Bridgepoint brought suit arguing BCBS is "liable to Bridgepoint for its negligent misrepresentations."[53] Under 12(b)(6), Bridgepoint's complaint may raise claims in a "personal capacity" that center around "representations" made by BCBS directly to Bridgepoint as a health care provider.[54] Accordingly, because Bridgepoint's claims may have a basis outside of BCBS's plan, the motion to dismiss is **DENIED** as to these claims.

b. **Louisiana Revised Statute 22:1821**

Louisiana Revised Statute § 22:1821 provides "various requirements for the payment of health insurance claims," including a penalty against an insurer for "failing to pay the full amount required for the procedures performed after written notices and proof of claims were furnished."[55]

---

[50] *Id.*
[51] R. Doc. 1 at 4.
[52] *Id.*
[53] *Id.* at 12.
[54] "Importantly, Plaintiffs stated in their complaint that they are seeking redress under Louisiana state laws in their individual capacities, not in their roles as assignees of the insureds." *Center for Surgery*, 2014 WL 4930443, at *9.
[55] *Center for Surgery,* 2014 WL 4930443, at *8–9.

Under the statute, "[f]ailure to comply…shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy."[56]

After reviewing the filings and the applicable law, the Court finds that Bridgepoint's claim under § 22:1821 is preempted by ERISA. Per the statute, an award under this claim is connected to the "benefits due under the terms of the policy." Therefore, a § 22:821 claim necessarily cannot be divorced from an ERISA plan and would invade an "area of exclusive federal concern," namely the interpretation of a plan.[57] Furthermore, "[a]s the statute states that the penalty is payable to the insured, i.e., the patients, [a medical provider] Plaintiff[] [is] not the proper part[y] to bring this claim."[58] Accordingly, in regards to Bridgepoint's § 22:821 failure to promptly pay claim, the motion is **GRANTED** and the claim is **DISMISSED**.

   c.  **Unjust Enrichment**

In ERISA cases, unjust enrichment claims "depend on [] allegations that the ERISA plan would have obliged [the insurer] to reimburse" a provider and, therefore, a provider can "recover under these claims only to the extent that the patients' ERISA plans confer on their participants and beneficiaries a right to coverage for the services provided."[59] Therefore, because such a claim is inextricably connected to a plan, it is preempted by federal law.[60] After all, the interpretation of an ERISA plan "addresses an area of exclusive federal concern."[61] Accordingly, in regards to

---

[56] *Id.*
[57] *See id.* at *6 (holding state law claims are not preempted when they, although brought congruent to ERISA claims, center on "alleged representations made to Plaintiffs directly" and "do not address areas of exclusive federal concern" such as plan interpretation).
[58] *Id.* at *9.
[59] *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 386 (5th Cir. 2011).
[60] *Id.*
[61] "ERISA preemption protects plans from unexpected financial consequences that could result from routine exposure to state-law claims. State-law claims premised on misrepresentations to a third party provider do not greatly implicate this concern, because an ERISA plan can avoid liability under such claims by taking care that it does not mislead providers regarding what they can expect to be paid if they render services for the plan's insureds. But there is no

Bridgepoint's unjust enrichment claim, the motion is **GRANTED** and the claim is **DISMISSED**.[62]

## CONCLUSION

For the above reasons, **IT IS ORDERED** that the motion is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that, in regards to Bridgepoint's ERISA claims, the motion is **DENIED.**

**IT IS FURTHER ORDERED** that, in regards to Bridgepoint's § 22:821 failure to promptly pay claim, the motion is **GRANTED** and the claim is **DISMISSED**

**IT IS FURTHER ORDERED** that, in regards to Bridgepoint's unjust enrichment claim, the motion is **GRANTED** and the claim is **DISMISSED**.

**IT IS FURTHER ORDERED** that, in regards to Bridgepoint's remaining state law claims, the motion is **DENIED**.

New Orleans, Louisiana this 7th day of June, 2022.

_____
Hon. Greg Gerard Guidry
United States District Judge

---

equivalent way for plan administrators to limit their exposure to state-law unjust enrichment or quantum meruit claims. Those claims, if not preempted, would allow any provider who has provided care for which the ERISA plan denied coverage to challenge the ERISA plan's interpretation of its policies in state court. That outcome would run afoul of Congress's intent that the causes of action created by ERISA be the exclusive means of enforcing an ERISA plan's terms, and permit state law to interfere with the relations among ERISA entities." *Id.* at 386-87.

[62] Furthermore, because "Louisiana law provides that no unjust enrichment claim shall lie when the claim is based on a relationship that is controlled by an enforceable contract" and the Plaintiff alleges the existence of a promise, this claim cannot stand. *Center for Surgery*, 2014 WL 4930443, at *9.